### HOTELS STATLER CO., Inc. v. CHASE et al.

### No. 13670–T.

United States District Court, S. D. California, Central Division.

April 7, 1952.

534

Samuel S. Gill (of Thelen, Marrin, Johnson & Bridges), Los Angeles, Cal., for plaintiff.

Joseph Henry Wolf, Los Angeles, Cal., for defendant.

TOLIN, District Judge.

Plaintiff, Hotels Statler Company, Inc., a corporation, sues for an injunction to restrain defendants from using the name "Statler Flower Shop" or "Statler Flowers and Gifts" in connection with defendants' flower and gift shop which it is now operating in the City of Los Angeles at a site approximately one and one-half miles from the address where plaintiff is nearing completion of what has been pub-licized by it as one of the Los Angeles area's largest hotels.

The business now owned by plaintiff was founded in New York in 1900 by Ellsworth M. Statler who caused plaintiff to be incorporated in that State in 1914. Since 1900 Mr. Statler and the plaintiff have continuously maintained an actively expanding high class hotel business which has become one of the three largest hotel chains operating in the United States. With rare exceptions, the hotels operated by plaintiff have used the word "Statler" as part of the hotel name and in those instances where this has not been done, public use of the hotel name was prominently accompanied by a legend "Statler Operated". Constant publicity has been given plaintiff's hotels since the date of their acquisition, namely, in Cleveland, Ohio, since 1912; Detroit, Michigan, since 1915; St. Louis, Missouri, since 1917; Boston, Massachusetts, since 1927; Washington D. C. since 1943; and New York City since 1948. Plaintiff's good will and the surname of its founder, Ellsworth M. Statler, have been carefully and expensively nurtured by a higher order of costly advertising in nationally circulated magazines and, in addition, it has enjoyed laudatory descriptions of its establishments and methods of operation in current magazine literature. Illustrative of this latter publicity is a series of three articles printed as feature stories in "The Saturday Evening Post" during March, 1950. In two of the three articles, the Los Angeles venture of plaintiff is given more than passing favorable publicity. The Los Angeles venture has been widely publicized under the name "Statler Center" since construction thereon commenced during 1950.

It has been part of plaintiff's system of hotel operation that it either operated or at least partially controlled numerous specialty shops in its hotels. It has quite generally operated flower shops which have been reached by telephone through the hotel switchboard and which automatically accepted charge accounts from persons enjoying credit with the hotel. Control of the flower shops has generally been limited by the terms of leases, selection

of lessees, and rights tied to percentage leases under which concessionaires operated most of the flower shops to a required standard dictated by plaintiff. In some cases selection of personnel who deal with the public is strictly Statler controlled. The use of the name "Statler" by such lessee florists has been licensed as to each of plaintiff's hotels presently operated except the one in St. Louis. In return for the license and sponsorship, plaintiff receives a percentage of the gross receipts from the florist's shop. To create business for the florist shop, plaintiff sponsors and advertises the flower shop in its house directories and publicity. Guests are permitted to charge flower and gift purchases to their hotel bills.

For some time past defendants have operated a retail flower shop in Los Angeles under the name "Filmar Florists". After construction was well under way on plaintiff's Los Angeles establishment and after plaintiff had spent thousands of dollars in publicizing that venture under the Statler name, defendants proposed to plaintiff's leasing agent that they be accepted as lessees of the flower shop then under construction in Statler Center. Prior to that proposal, defendants filed with the County Clerk of Los Angeles County a certificate that they were transacting business under a fictitious name. This was pursuant to Sections 2466 and 2468, Civil Code of California.[1] The certificate duly executed, published and filed declared that defendants were conducting a business under the name "Statler Flowers and Gifts." Plaintiff rejected defendants' offer to lease space in Statler Center whereon defendants immediately commenced, for the first time, to actively publicize their business, theretofore known as "Filmar Florists," under the name of "Statler Flowers and Gifts." They notified plaintiff they owned the trade name; erected a sign over their shop proclaiming the Statler name; and otherwise commenced to use the name declared in their certificate.

Defendants suggest that the numerous authorities upon which past decisions of this Court have been grounded in favor of prior users of a trade name have no application because the business under

1. "§ 2466. [User of fictitious name to file and publish certificate: Contents.] Except as otherwise provided in the next section every person transacting business in this State under a fictitious name and every partnership transacting business in this State under a fictitious name, or a designation not showing the names of the persons interested as partners in such business, must file with the clerk of the county in which his or its principal place of business is situated, a certificate, stating the name in full and the place of residence of such person and stating the names in full of all the members of such partnership and their places of residence.

"Such certificate must be published once a week for four successive weeks, in a newspaper published in the county, if there be one, and if there be none in such county, then in a newspaper in an adjoining county. An affidavit showing the publication of such certificate shall be filed with the county clerk within thirty days after the completion of such publication. (Enacted 1872; Am.Code Amdts. 1873–74, p. 253; Stats.1911, p. 440; Stats.1923, p. 238.)
* * * * * *

"§ 2468. [Signing and acknowledgment of certificate: Time for filing and publication: Action not maintainable until certificate filed.] The certificate filed with the clerk as provided in section 2466 must be signed by the person therein referred to, or by the partners, as the case may be, and acknowledged before some officer, authorized to take the acknowledgment of conveyance of real property. Where a business is hereafter commenced by a person under a fictitious name or a partnership is hereafter formed, the certificate must be filed and the publication designated in that section must be made within one month after the commencement of such business, or after the formation of the partnership, or within one month from the time designated in the agreement of its members for the commencement of the partnership. Where the business has been heretofore conducted under a fictitious name or where the partnership has been heretofore formed, the certificate must be filed and the publication made within six months after the passage of this act.
* * * "

which plaintiff has acquired substantial good will for the name "Statler" is the hotel business and defendants are not using that name in a hotel business, but simply as the name of a flower and gift shop.

Secondly, it is argued that defendants are prior actual users in California, for while plaintiff had procured the incorporation of a "Statler" subsidiary in California in 1946, defendants adopted the name "Statler Flowers and Gifts" by filing a fictitious name certificate and actually commencing to do business under the Statler name, as therein declared, before plaintiff did more than prepare for business in Los Angeles by acquiring a site, commencing construction, preparation for hotel business at a future date, and inclusion of the Los Angeles project in a general publicity campaign which it is conceded cost plaintiff approximately $8,000,000.00 over the past eleven years. The points are without merit. It is common in the operation of an upper class hotel to include a flower shop as an incident to the operation of the hotel proper. Plaintiff's operation has been described as that of "a hotel plus," meaning that the guests in Statler hotels would have available within the establishment many of the special services and commodities which hotel guests most frequently desire. Plaintiff's hotels are known to be the type of hotel falling within this class of business.

Section 14,400 of the California Business and Professions Code provides:

"Any person who has first adopted and used a trade name, whether within or beyond the limits of this State, is its original owner."

Section 14,402 provides:

"Any court of competent jurisdiction may restrain, by injunction, any use of trade names in violation of the rights defined in this chapter."

 Such property right in California of a trade name developed and used outside California was recognized in Stork Restaurant, Inc. v. Sahati, 9 Cir., 1948, 166 F.2d 348. The Stork Restaurant, Inc. case also pointed out that this rule applies to threatened acts as well as the actual doing of business with another's trade name. The Court in this connection referred to Standard Oil Co. of New Mexico, Inc. v. Standard Oil Co. of California, 10 Cir., 1932, 56 F.2d 973, where the defendant had gone no further than to incorporate.

The plaintiff in this case first formally adopted the name "Statler" for the doing of business in California in 1946 through its subsidiary "California Statler Corporation"; and thereafter, but prior to the time of defendants first commenced to use the name "Statler", such subsidiary carried on the following activities within the State of California; Purchased a hotel site at Figueroa, Wilshire and Seventh Streets, in Los Angeles, for the sum of $1,175,000.00; prepared plans for the construction of a hotel on said site; donated $10,000.00 to Greater Los Angeles Plans, Inc.; collected thousands of dollars in rentals from tenants occupying the buildings then existing on the hotel site; demolished the existing buildings on the hotel site, and substantially completed a 1275-room hotel and office building; leased space in the office building; and commenced the leasing of shop space in the hotel building. All of these activities were carried on within the limits of the State of California under names which included the name "Statler".

 It appears from the decision in Stork Restaurant, Inc. v. Sahati, 9 Cir., 1948, 166 F.2d 348 that the owner of a well publicized trade name which enjoys good will is entitled to the protection of that name even though the establishments which it operates are located at a point geographically distant from the place selected by the second appropriator of the name. Stork Restaurant, Inc. operated "The Stork Club" in New York City. The Court found this place to be a night club type cafe supplying expensive food, beverages, music and dancing facilities publicly known as "The Stork Club" which was extensively publicized on a national basis. Defendant Sahati, et al. commenced the operation of a small bar, tavern and cocktail lounge in San Francisco and adopted for it the same name used by the New York concern. One of the contentions

made by defendants here is appropriately disposed of by the following quotation from the Stork Restaurant, Inc. case, 166 F.2d 348, at page 354:

"The appellees insist that, because of their 'most humble field of operation' they cannot be considered to be in competition with the appellant, whose place 'is of the highest'. Since they are not in competition *at all,* obviously—so runs their argument— they cannot be in *unfair* competition with the appellant. Plausible as this contention may seem, it does not correctly state the law.

"In Academy of Motion Picture Arts and Sciences v. Benson, 15 Cal.2d 685, 691, 692, 104 P.2d 650, 653, hereinafter referred to as 'the motion picture case', the Supreme Court of California, after an exhaustive review of the authorities, said: 'The case before us may be novel, but it does not follow that the plaintiff may not be entitled to some relief. In calling attention to the novelty of the facts in American Philatelic Society v. Claibourne, 3 Cal. 2d 689, 46 P.2d 135, 140, this court said: "It is also to be borne in mind that the rules of unfair competition are based not alone upon the protection of a property right existing in the complainants, but also upon the right of the public to protection from fraud and deceit." * * * *And it does not appear necessary that the parties be in competitive businesses* * * *.'

"The modern general law on this subject was trenchantly epitomized by Judge Learned Hand in the leading case of Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 973, 974:

"'The law of unfair trade comes down very nearly to this—as judges have repeated again and again—that one merchant shall not divert customers from another by representing what he sells as emanating from the second. This has been, and perhaps even more now is, the whole Law and the Prophets on the subject, though it assumes many guises. Therefore it was at first a debatable point whether a merchant's good will, indicated by his mark, could extend beyond such goods as he sold. How could he lose bargains which he had no means to fill? What harm did it do a chewing gum maker to have an ironmonger use his trademark? The law often ignores the nicer sensibilities.

"'However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. * * *'" (Emphasis theirs.)

See also Safeway Stores, Inc. v. Dunnell, 9 Cir., 1949, 172 F.2d 649; Triangle Publications Inc. v. Rohrlich, 2 Cir., 1948, 167 F.2d 969; Brooks Bros. v. Brooks Clothing of California, Limited, D.C., 60 F.Supp. 442; Del Monte Special Food Co. v. California Packing Corporation, 9 Cir., 34 F.2d 774; 17 George Washington Law Review 112; Kingsley v. Jacoby, Sup., 20 New York S. 46.

Although it is expected that some months will pass before plaintiff's hotel in Los Angeles will be ready for operation, plaintiff presently enjoys a valuable good will in its name and draws extensive patronage from Southern California to its eastern hotels. Under the authorities above cited, particularly Stork Restaurant, Inc. v. Sahati, it would be the duty of the Court to protect plaintiff even if it had not commenced construction of a hotel in Los Angeles, or even if none be in contemplation for that City. All the more reason exists for injunctive relief in this case

where defendants seek a local competitive advantage by deception of the public who have been influenced by plaintiff's expensive development of its good will to give their custom to a local Statler establishment.

Plaintiff does not seek damages but prays only that the preliminary injunction be made permanent.

Judgment, accordingly, will be entered for plaintiff together with judgment for its costs. Findings and Decree to be settled according to Local Rule.