**TIME, Inc.   v.   T.I.M.E. Inc.**
**Civ. No. 15947.**

United States District Court,
S. D. California, Central Division.
July 29, 1954.

**448**

O'Melveny & Myers, Homer I. Mitchell and Bennett W. Priest, Los Angeles, Cal., and Cravath, Swaine & Moore and Harold R. Medina, Jr., New York City, for plaintiff.

Betts, Ely & Loomis, Los Angeles, Cal., and Benson & Howard, Lubbock, Tex., for defendant.

MATHES, District Judge.

In this action "for infringement of a trade-mark registered in the United States Patent Office and for unfair competition" plaintiff, a New York corporation, seeks an injunction restraining defendant, a Delaware corporation, "from using any simulation of the name and mark 'Time', and from using the name and mark 'Time' without the insertion of periods after each of the letters * * *."

The equity jurisdiction of this court is invoked, Briggs v. United Shoe etc. Co., 1915, 239 U.S. 48, 50, 36 S.Ct. 6, 60 L.Ed. 138; Rees v. Watertown, 1873, 19 Wall. 107, 86 U.S. 107, 122, 22 L.Ed. 72, under the Lanham Trade-Mark Act, 15 U.S. C.A. §§ 1121, 1125, 1126(b) (1–2), (g–i), and under the pendent-jurisdiction statute, 28 U.S.C. § 1338(b); cf. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 324–325, 59 S.Ct. 191, 83 L.Ed. 195, and upon the ground of diversity of citizenship, 28 U.S.C. § 1332; Suttle v. Reich Bros. Const. Co., 1948, 333 U.S. 163, 166, 68 S.Ct. 587, 92 L.Ed. 614; Blake v. McClung, 1898, 172 U.S. 239, 259, 19 S.Ct. 165, 43 L.Ed. 432.

The case was submitted for decision at pre-trial hearing upon the facts as shown by the admissions in the pleadings and by the pre-trial stipulation together with the exhibits incorporated therein.

Thus there is no controversy as to the evidentiary facts, albeit there is considerable disagreement as to the inferences to be drawn therefrom in resolving the ultimate-fact issues.

The pre-trial stipulation of the parties recites that: "Plaintiff was incorporated under the laws of the State of New York on November 28, 1922. Plaintiff's corporate title is, and always has been, Time, Incorporated * * *. Plaintiff publishes and distributes throughout the United States and in many foreign countries five magazines: Time, Life, Fortune, Architectural Forum, and House & Home. Time is a weekly news magazine published by plaintiff since 1922. Life is a weekly pictorial news magazine published by plaintiff since 1936. Fortune is a monthly magazine devoted to business affairs published by plaintiff since 1930. Architectural Forum is a monthly magazine devoted to the building industry published by plaintiff since 1932. House & Home is a monthly magazine devoted to residential building published by plaintiff since 1952 * * *. Plaintiff owns the controlling interests in two television and radio stations. One is KOB in Albuquerque, New Mexico, acquired by plaintiff in the spring of 1952. The other is KDYL in Salt Lake City, Utah, acquired by plaintiff in the spring of 1953. Plaintiff produces and distributes sound and motion picture films in a series entitled, 'The March of Time.' Those films have been widely exhibited in theatres and on television in the United States * * *. Plaintiff has its main office at Time & Life Building, * * * New York City, editorial and advertising offices throughout the United States and in many foreign cities, and printing plants in Los Angeles, Chicago, Philadelphia, Japan, London, and Paris. Since 1922, plaintiff has used the name and trade-mark 'Time' in intrastate, interstate, and foreign commerce. That name and mark 'Time' has appeared on the cover of, and elsewhere in, plaintiff's magazine Time since 1922. Plaintiff has registered the mark 'Time' in the United States Patent Office in connection with certain of its uses, including registration 246,868 for a weekly news magazine, consisting of the word 'Time' and the phrase, 'The Weekly News Magazine,' * * * registered on September 18, 1928, renewed September 19, 1948, and republished under the Trade-Mark Act of 1946 on July 10, 1951, and registration 565,061 for a weekly news magazine consisting of the word 'Time,' * * * registered October 7, 1952. Plaintiff has spent over $100,000,000 in promoting its trade-marks and corporate title. Since 1922, plaintiff has spent over $41,000,000 * * * to promote 'Time' magazine, of which $4,506,000 was spent in 1952.

"Defendant 'T.I.M.E. Incorporated' is a Delaware corporation created May 5, 1952, licensed to do business in the States of California, Arizona, New Mexico, Texas, and Oklahoma * * *. T.I.M.E. Incorporated is the emerging corporation from the consolidation of two predecessors, to wit, The Intercity Motor Express, Inc., d/b/a T.I.M.E., a Texas corporation, and Southwestern Freight Lines, a California corporation * * *.

"The Intercity Motor Express, Inc. was chartered and began business the 25th day of November, 1945 * * *. On and after November, 1945, The Intercity Motor Express did business as T.I.M.E. as printed and as 'time' as spoken. In its advertising to the public on its documents, such as, bills of lading, freight bills, invoices, checks, etc., there appeared a symbol * * * consisting of the initials T.I.M.E. appearing in an oval * * * yellow background. Since January, 1946, The Intercity Motor Express has been listed in the telephone directories in the cities in which it operated as TIME Freight Lines. On and after November, 1945, the semi-trailers of this carrier were painted with the name T.I.M.E., and these trailers * * * traveled throughout the States of New Mexico, Arizona and California and * * * throughout the United States but principally in the Midwest section of the United States * * *.

"The public doing business with The Intercity Motor Express refer to it orally

as Time; throughout the trucking and shipping industry The Intercity Motor Express and T.I.M.E. Incorporated are known orally as Time. Soon after The Intercity Motor Express, Inc. commenced operations in November 1945 it adopted the practice of contracting its name into T.I.M.E. and did business as T.I.M.E., that designation appearing on its trucks and in its advertisements *in a form of* symbol with the initials T.I.M.E. appearing in an oval with a yellow background * * *.

"During the period from November 1945 through September 1952 in which The Intercity Motor Express, Inc. and Southwestern Freight Lines did business as aforesaid, no confusion arose as between the operations of those companies and the operations of plaintiff. One month after the incorporation of defendant and in June 1952 plaintiff called to the attention of * * * defendant its objections to the adoption of the corporate name T.I.M.E. Incorporated. At that time representatives of defendant were of the opinion that the inclusion of periods in the name T.I.M.E. would suffice to prevent any confusion and so informed plaintiff * * *. Thereafter, a new symbol was adopted and used by defendant under which it did business as Time, the name appearing in red * * *.

"Commencing in December 1952 plaintiff received between 15 and 20 letters a week and 15 and 20 telephone calls a week from persons and corporations either desiring to ship merchandise by truck or inquiring concerning the arrival of merchandise by truck. Those telephone calls and other communications continue to the present time [January 20, 1954], although the volume has been reduced to approximately 5 to 10 telephone calls per week and 5 to 10 letters per week. In all plaintiff has received over 500 misdirected calls and letters * * *.

"Defendant is engaged solely in the business of operating a public freight service * * *. Plaintiff is engaged in the business of publication of magazines, production of motion picture films, tele-vision and radio presentations and operation of television stations and is not now, and does not intend, to engage in the business of a public motor carrier for hire, although, in the course of its operations, it owns and operates trucks. There are between 50 and 100 trade-mark registrations in the United States Patent Office which incorporate the word Time, together with, in each instance, some other word or words, as trade-marks, such as 'Lux Time', 'Coke Time', 'Time to Retire' and 'More Times on Time'. There are other registrations which incorporate the word Time, together with some other symbol * * *. There are, in addition, registrations * * * of the single word 'Time' * * *. There are hundreds of daily newspapers which bear the name 'Times', such as The New York Times and Los Angeles Times, and, in addition, a Greenwich, Connecticut paper has been for many years appearing under the name 'Greenwich Time'. In telephone directories published by the Bell Telephone System there are listed numerous businesses which incorporate 'Time' as a part of a trade name."

The Lanham Trade-Mark Act of July 5, 1946 provides that: "The district * * * courts of the United States shall have original jurisdiction * * * of all actions arising under this [Act], without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." 60 Stat. 427, 15 U.S.C.A. §§ 1051–1127, effective July 5, 1947, § 46(a), 15 U.S.C.A. §§ 1051 note, 1121.

Section 1338(a) of Title 28 of the United States Code, as enacted upon revision, provides that: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases." 62 Stat. 931 (1948).

Since the word " 'any * * *' means what it says" Kilpatrick v. Texas & Pac. R. Co., 1949, 337 U.S. 75, 77, 69 S.Ct. 953, 93 L.Ed. 1223, and the Congress was ex-

plicit that "such jurisdiction shall be ex-clusive of the courts of the states in patent and copyright cases" 28 U.S.C. § 1338 (a), but not in trade-mark cases, see U.S.Const. Art. I, § 8, cl. 8; In re Trade Mark Cases, 1879, 100 U.S. 82, 25 L.Ed. 550, plaintiff's act in invoking the equity jurisdiction of this court upon the ground of diversity of citizenship raises at the outset under the Supremacy Clause, U.S. Const. Art. VI, cl. 2, the question of the extent to which the Lanham Trade-Mark Act preempts or occupies the field of claims arising from infringement of, and unfair competition in the use of, trademarks and other marks defined in the Act as well as trade names and commercial names. See 15 U.S.C.A. § 1127.

The law of California makes provision for registration of trade-marks and also provides civil and criminal remedies for infringement and unfair competition in the use of trade-marks and trade names. Cal.Business & Professions Code, §§ 14200–14491; Stats.1941, pp. 703–715; Cal.Civ.Code, §§ 3369–3370; Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 191 F.2d 141, upon petition for rehearing, id. 1951, 191 F.2d 731; Sunbeam Corp. v. Sunbeam Lighting Co., D.C.S.D. Cal.1949, 83 F.Supp. 429, affirmed in part and reversed in part, 9 Cir., 1950, 183 F. 2d 969, certiorari denied, 1951, 340 U.S. 920, 71 S.Ct. 357, 95 L.Ed. 665; Stork Restaurant v. Sahati, 9 Cir., 1948, 166 F.2d 348; Looz v. Ormont, D.C.S.D.Cal. 1953, 114 F.Supp. 211.

Inasmuch as federal law cannot be "curtailed, circumvented or extended" by state law, Garner v. Teamsters Union, 1953, 346 U.S. 485, 501, 74 S.Ct. 161, 171, the point of inquiry is whether state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 1941, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581; see Hill v. Florida, 1945, 325 U.S. 538, 542, 65 S.Ct. 1373, 89 L.Ed. 1782. Where the Congressional will collides with that of a state, the Supremacy clause dictates that the State must yield. Houston v. Moore, 1820, 5 Wheat. 1, 18 U.S. 1, 22, 5 L.Ed. 19; see McColloch v. Maryland, 1819, 4 Wheat. 316, 17 U.S. 316, 406, 4 L.Ed. 579.

As to trade-marks and trade names, in the words of Mr. Justice Holmes, "The subject-matter in this instance is peculiarly one that calls for uniform law * * *." Pennsylvania R. Co. v. Public Service Comm., 1919, 250 U.S. 566, 569, 40 S.Ct. 36, 37, 64 L.Ed. 1142. Considering the entire scheme of the Lanham Act, application of diverse state laws to federally-registered trade-marks would seriously hinder the effectiveness of the federal law, Charleston & W. C. R. Co. v. Varnville Furniture Co., 1915, 237 U.S. 597, 604, 35 S.Ct. 715, 59 L.Ed. 1137; Sinnot v. Davenport, 1859, 22 How. 227, 63 U.S. 227, 242–243, 16 L.Ed. 243; Prigg v. Commonwealth of Pennsylvania, 1842, 16 Pet. 539, 41 U.S. 539, 617, 10 L.Ed. 1060, and largely defeat accomplishment of the purpose of federal trade-mark registration. Savage v. Jones, 1912, 225 U.S. 501, 533, 32 S.Ct. 715, 56 L.Ed. 1182; see Napier v. Atlantic Coast Line R. Co., 1926, 272 U.S. 605, 611, 47 S.Ct. 207, 71 L.Ed. 432.

That it was the Congressional will to occupy the field of claims arising from infringement of and unfair competition in the use of registered trade-marks and other marks defined in the Act, as well as trade names and commercial names, 15 U.S.C.A. §§ 1126(g–i), 1127, to the extent of federal power under the Commerce Clause, U.S.Const. Art. I, § 8, cl. 3, appears from the considerations just stated and the statutory declaration that: "The intent of this Act is to regulate commerce within the control of Congress * * *." 15 U.S.C.A. § 1127; cf. U. S. Printing & Lithograph Co. v. Griggs Cooper Co., 1929, 279 U.S. 156, 158, 49 S.Ct. 267, 73 L.Ed. 650; Dad's Root Beer Co. v. Doc's Beverages, 2 Cir., 1951, 193 F.2d 77, 81–82.

Comprehensive statutory remedies are provided in the Lanham Act "for infringement of marks". See 15 U.S.C.A. § 1126(h); S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176, certiorari

denied, 1949, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527. These statutory remedies include broad injunctive relief, as well as damages, for infringement and for unfair competition in the use of any registered mark. 15 U.S.C.A. §§ 1114, 1116–1119. It is well to emphasize that these federal remedies are, by the terms of the statute [Ibid.], limited to marks that are registered under the Act; and the term "mark" is defined as including, unless the contrary is plainly apparent from the context, "any trade-mark, service mark, collective mark, or certification mark entitled to registration  *  *  *." Id. § 1127.

Unfair competition in the use of a mark registered under the Act consists in any use intended or likely "to cause confusion or mistake or to deceive purchasers as to the source of [sic] origin of  *  *  *  goods or services  *  *." Id. § 1114(1)(a). This is in essence the common-law concept of unfair competition as applied to the use of trade-marks and trade names as well as other business conduct. See: Steele v. Bulova Watch Co., 1952, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252; cf. American Steel Foundries v. Robertson, 1926, 269 U.S. 372, 380–384, 46 S.Ct. 160, 70 L.Ed. 317; Hanover Star Milling Co. v. Metcalf, 1916, 240 U.S. 403, 412–413, 36 S.Ct. 357, 60 L.Ed. 713; Elgin National Watch Co. v. Illinois Watch Case Co., 1901, 179 U.S. 665, 673–674, 21 S.Ct. 270, 45 L.Ed. 365; 3 Restatement, Torts, §§ 708–756 (1938).

The Act, furthermore, gives to "citizens or residents of the United States" 15 U.S.C.A. § 1126(i), owning "trade names or commercial names" Id. §§ 1126(g), 1127, "whether or not they form parts of marks" Id. § 1126(g), and whether such names be anywhere registered or unregistered Id. § 1126(a, g), a federal cause of action for unfair competition in the use of such names, with the same remedies as provided in the Act for infringement of registered marks cf. Hodgson v. Fifth Ave. Plastics, D.C. S.D.N.Y.1950, 94 F.Supp. 160 "available so far as they may be appropriate in repressing acts of unfair competition" in the use of such names. 15 U.S.C.A. § 1126(h).

Accordingly it is held that the Lanham Act gives a federal cause of action for infringement of marks registered under the Act, S. C. Johnson & Son v. Johnson, supra, 175 F.2d at page 178, and for unfair competition in the use of registered marks as well as trade and commercial names. Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339; In re Lyndale Farm, 1951, 186 F.2d 723, 38 C.C.P.A., Patents, 825; Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962; Old Reading Brewery v. Lebanon Valley Brewing Co., D.C.M.D.Pa.1952, 102 F. Supp. 434, 437–438; see The Haeger Potteries v. Gilner Potteries, D.C.S.D. Cal.1954, 123 F.Supp. 261.

It would be a plain inconsistency then to permit state law to govern actions for unfair competition in the use of trade names and marks "in commerce", Cloverleaf Butter Co. v. Patterson, 1942, 315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754, since a uniform national law has been enacted, Haeger Potteries v. Gilner Potteries, supra, 123 F.Supp. 261, and the object sought to be achieved by the federal statute precludes concurrent enforcement of state law on the same subject in like cases. Southern R. Co. v. Railroad Commission, 1915, 236 U.S. 439, 446, 448, 35 S.Ct. 304, 59 L.Ed. 661; New York Central R. Co. v. Winfield, 1917, 244 U.S. 147, 148, 37 S.Ct. 546, 61 L.Ed. 1045. Nor is there any room to view state law as complementary to the Lanham Act in the face of undoubted Congressional intent to occupy completely a field to the full extent constitutionally permissible. Cf. Missouri Pacific R. Co. v. Porter, 1927, 273 U.S. 341, 345–346, 47 S.Ct. 383, 71 L.Ed. 672; McDermott v. Wisconsin, 1913, 228 U.S. 115, 132–133, 33 S.Ct. 431, 57 L.Ed. 754.

Thus causes of action for unfair competition in the use "in commerce" of trade-marks and trade names which, after Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188, arose only under state law,

Pecheur Lozenge Co. v. National Candy Co., 1942, 315 U.S. 666, 667, 62 S.Ct. 853, 86 L.Ed. 1103; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra, 305 U.S. at pages 325, 336, 59 S.Ct. 191, have arisen since the effective date of the Lanham Act in 1947 under the supervening federal law. See: American Auto Ass'n v. Spiegel, 2 Cir., 205 F.2d 771, certiorari denied, 1953, 346 U.S. 887, 74 S.Ct. 138; Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795, certiorari denied, 1949, 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518.

■ The pendent-jurisdiction statute, 28 U.S.C. § 1338(b), necessarily presupposes a claim of unfair competition arising otherwise than "under the copyright, patent or trade-mark laws", since unless so interpreted § 1338(b) would confer no jurisdiction additional to that already conferred by § 1338(a) and so would be mere surplusage. See: L'Aiglon Apparel, Inc. v. Lana Lobel, Inc., 3 Cir., 1954, 214 F.2d 649; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra, 305 U.S. at pages 324–325, 59 S.Ct. 191; Hurn v. Oursler, 1933, 289 U.S. 238, 240–243, 248, 53 S.Ct. 586, 77 L.Ed. 1148; Stark Bros. Nurseries & Orchards Co. v. Stark, 1921, 255 U.S. 50, 41 S.Ct. 221, 65 L.Ed. 496; Musher Foundation v Alba Trading Co., 2 Cir., 127 F.2d 9, certiorari denied, 1942, 317 U.S. 641, 63 S.Ct. 33, 87 L.Ed. 517; Pure Oil Co. v. Puritan Oil Co., 2 Cir., 1942, 127 F.2d 6; Bulova Watch Co. v. Stolzberg, D.C.Mass.1947, 69 F.Supp. 543; Reviser's Note to § 1338(b), 28 U.S.C.A. Pendent jurisdiction under § 1338(b) is not properly invoked then except when necessary to sustain federal jurisdiction of a cause of action for unfair competition arising under state law.

■ In a case where as at bar diversity of citizenship exists, pendent jurisdiction under 28 U.S.C. § 1338(b) adds nothing to, and fully coincides with, diversity jurisdiction under 28 U.S.C. § 1332, but for the jurisdictional-amount requirement of § 1332 which is entirely absent from § 1338(b) and from the Lanham Act as well. 15 U.S.C.A. § 1121;

see Fashion Originators Guild v. Federal Trade Commission, 1941, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949; Armstrong Paint & Varnish Co. v. Nu-Enamel Corp., supra, 305 U.S. at pages 324–325, 336, 59 S.Ct. 191; Cities Service Oil Co. v. Dunlap, 1939, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Ruhlin v. N. Y. Life Ins. Co., 1938, 304 U.S. 202, 205, 58 S.Ct. 860, 82 L.Ed. 1290; Erie R. Co. v. Tompkins, supra, 304 U.S. at page 78, 58 S.Ct. 817; Hurn v. Oursler, supra, 289 U.S. at pages 240–243, 248, 53 S.Ct. 586; Rice & Adams Corp. v. Lathrop, 1929, 278 U.S. 509, 515, 49 S.Ct. 220, 73 L.Ed. 480; Stark Bros. Nurseries & Orchards Co. v. Stark, supra, 255 U.S. at page 51, 41 S.Ct. 221; Bell v. Hood, D.C.S.D.Cal.1947, 71 F.Supp. 813, 817–821.

■ Exercising the equity jurisdiction of this court under the Lanham Act, consideration of plaintiff's federal claim for trade-mark infringement brings attention to the fact that while the cause of action itself arises under and the remedies are provided by federal law, ownership of the mark itself arises under and is governed by state law, except to the extent made incontestable under applicable provisions of the Lanham Act. 15 U.S.C.A. §§ 1065, 1052, 1115; see: Armstrong Paint & Varnish Co. v. Nu-Enamel Works, supra, 305 U.S. at pages 334–335, 59 S.Ct. 191; Trade Mark Cases, supra, 100 U.S. at page 83; S. C. Johnson & Son v. Johnson, supra, 175 F.2d at page 178; Looz, Inc., v. Ormont, supra, 114 F.Supp. at page 216; Cal.Bus. & Prof.Code, § 14270; cf. Luckett v. Delpark, 1926, 270 U.S. 496, 510, 46 S.Ct. 397, 70 L.Ed. 703; New Marshall Engine Co. v. Marshall Engine Co., 1912, 223 U.S. 473, 478, 32 S.Ct. 238, 56 L.Ed. 513. Ownership of a trade name or a commercial name, 15 U.S.C.A. § 1127, likewise arises under and is governed by state law.

Section 14400 of the Business and Professions Code of California provides with respect to ownership of a trade name, as does § 14270 with respect to ownership of a trade-mark, that: "Any

person who has first adopted and used a trade-name, whether within or beyond the limits of this State, is its original owner." See Stork Restaurant v. Sahati, supra, 166 F.2d at pages 352–353; cf. Pagliero v. Wallace China Co., supra, 198 F.2d at pages 341, 344; Stauffer v. Exley, supra, 184 F.2d at page 963.

It is conceded in the case at bar that plaintiff is a prior-in-time user of both the registered trade-mark and the unregistered trade name "Time". It is conceded also that the mark "Time" was properly registered by plaintiff on the principal register and is presumably valid. 15 U.S.C.A. §§ 1051, 1052, 1115.

The federal cause of action provided in the Lanham Act for infringement of a registered mark, with the appropriate remedies of injunctive relief and damages, arises whenever "Any person * * * shall, in commerce, * * * use, without the consent of the registrant, any reproduction * * * or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of [sic] origin of such goods or services * * *." 15 U.S. C.A. §§ 1114, 1116, 1117.

Thus the federal statutory test of *trade-mark infringement under the Lanham Act is, as at common law, likelihood of confusion or mistake or deception of purchasers*. See: Douglas Laboratories Corp. v. Copper Tan, Inc., 2 Cir., 210 F.2d 453, certiorari denied, 1954, 347 U.S. 968, 74 S.Ct. 779; American Chicle Co. v. Topps Chewing Gum, 2 Cir., 1953, 208 F.2d 560; Q-Tips, Inc., v. Johnson & Johnson, 3 Cir., 206 F.2d 144, certiorari denied, 1953, 346 U.S. 867, 74 S.Ct. 106; Hyde Park Clothes v. Hyde Park Fashions, 2 Cir., 204 F.2d 223, certiorari denied, 1953, 346 U.S. 827, 74 S.Ct. 46; Independent Nail & Packing Co. v. Stronghold Screw Products, 7 Cir., 205 F.2d 921, 925, certiorari

denied, 1953, 346 U.S. 886, 74 S.Ct. 138; Springfield Fire & Marine Ins. Co. v. Founders' etc. Ins. Co., D.C.N.D.Cal. 1953, 115 F.Supp. 787; 3 Restatement, Torts, §§ 711, 728, comment a.

Protection of the owner's interest in a trade-mark has been held to warrant injunction against simulation in a non-competing business if there is likelihood of confusion of source by prospective purchasers and a consequent hazard to the trade-mark owner's good will. See: Triangle Publications v. Hanson, D.C.E.D.Mo.1946, 65 F.Supp. 952, 959, affirmed, 7 Cir., 163 F.2d 74, certiorari denied, 1947, 332 U.S. 855, 68 S.Ct. 387, 92 L.Ed. 424; Brooks Bros. v. Brooks Clothing of Cal., D.C.S.D.Cal.1945, 60 F.Supp. 442, affirmed, 9 Cir., 1947, 158 F.2d 798, certiorari denied, 1948, 331 U.S. 824, 67 S.Ct. 1315, 91 L.Ed. 1840; Folmer Graflex Corp. v. Graphic Photo Service, D.C.Mass.1940, 35 F.Supp. 963, 964.

To borrow Judge Johnsen's words in Hanson v. Triangle Publications, supra, 163 F.2d 74, "The use of another's mark or name, even in a non-competitive field, where the object of the user is to trade on the other's reputation and good will, or where that necessarily will be the result, may constitute unfair competition." 163 F.2d at page 78. So the fact that in the case at bar defendant does not directly compete with plaintiff would not in and of itself preclude the injunctive relief sought. Cf. L. E. Waterman Co. v. Gordon, 2 Cir., 1934, 72 F.2d 272; Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, 974; 3 Restatement, Torts §§ 730 comment b, 732, 733.

However, as Judge Stephens pointed out in Sunbeam Furniture Corp. v. Sunbeam Corp, supra [191 F.2d 144], "differentiation is made between 'strong' and 'weak' marks based upon whether the word sought to be protected is general or fanciful." 191 F.2d at page 144. The fanciful or coined word is deemed "strong" and is more broadly protected

as a trade-mark or trade name, even as to non-competing goods; while the general or descriptive word is considered "weak" as a trade name or trade-mark, and is accorded but narrow protection. Sunbeam Lighting Co. v. Sunbeam Corp., supra, 183 F.2d at page 973; Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 1948, 170 F.2d 958, certiorari denied, 1949, 336 U.S. 945, 69 S.Ct. 813, 93 L.Ed. 1102; Triangle Publications v. Rohrlich, 2 Cir., 1948, 167 F.2d 969, 972–973; Vogue Co. v. Thompson-Hudson Co., 6 Cir., 1924, 300 F. 509, certiorari denied, 1926, 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850; see Nancy Ann Storybook Dolls v. Dollcraft Co., 9 Cir., 1952, 197 F.2d 293; Palmer v. Gulf Pub. Co., D.C.S.D.Cal. 1948, 79 F.Supp. 731; Plough, Inc. v. Intercity Oil Co., D.C.E.D.Pa.1939, 26 F. Supp. 978; Schechter, The Rational Basis of Trademark Protection, 40 Harv. L.Rev. 813, 827–829 (1927).

As Judge Learned Hand observed in Landers, Frary & Clark v. Universal Cooler Corp., 2 Cir., 1936, 85 F.2d 46; "It is quite true that, just as a coined word is easier to protect than a word of common speech upon goods on which the owner has used it, so it is easier to prevent its use upon other kinds of goods. The proprietary connotation,—'secondary meaning,'—of a word of common speech is harder to create and easier to lose, and its fringe or penumbra does not usually extend so far so that of a coined word." 85 F.2d at page 48; see American Steel Foundries v. Robertson, supra, 269 U.S. at page 372, 46 S.Ct. 160, 70 L.Ed. 317.

Plaintiff here uses as the title for its news magazine the single word "Time", a most ordinary and common word, a word for which it would be difficult to establish a secondary meaning in any field. Since "Time" connotes the passage of time and the happening of events, it is a descriptive and not a fanciful name as applied to a news magazine. The same must be said of defendant's use of the word in the transportation field, for there "Time" connotes expeditiousness, though perhaps that connotation is less clear there than that of the passing of time in news dissemination activities.

■ "Time", as plaintiff employs it, being both an ordinary word as opposed to a coined word, and a descriptive word as opposed to a fanciful word, the protection necessary to be extended in order to avoid likelihood of confusion among purchasers, 15 U.S.C.A. § 1114, is properly limited at least to the area of news communication, if not to the narrower area of printed news magazines, where plaintiff has established some secondary meaning.

■ Whatever confusion of the public results from the use of the word "Time" by organizations other than plaintiff is occasioned in part by plaintiff's choice in selecting such a common word for its trade name and trade-mark. Since plaintiff cannot exclude the world from the use of so common a word as "Time", non-competitors of plaintiff such as defendant truck line should be free to make any use of the word not likely to confuse. American Steel Foundries v. Robertson, supra, 269 U.S. at pages 382–384, 46 S.Ct. 160; 3 Restatement, Torts §§ 730, 731. And even where some confusion results from use of such a common descriptive word as "Time" by a non-competitor, injunctive relief is not warranted where it would be impossible *ex facie* to formulate a decree which would be at once effective in eliminating the confusion and just to the parties.

■ Since a claim for infringement of a trade-mark or trade name is only part of the broader claim of unfair competition in the use of a mark or a name and such unfair competition may exist even in the absence of infringement, there remains for consideration the unfair competition aspect of the case here. Tillman & Bendel v. California Packing Corp., 9 Cir., 63 F.2d 498, certiorari denied, 1933, 290 U.S. 638, 54 S.Ct. 55, 78 L.Ed. 554; Silvers v. Russell, D.C. S.D.Cal.1953, 113 F.Supp. 119, 122.

■ As with a claim of infringement, the test in an action under the

Lanham Act for unfair competition in the use of a trade-mark or trade name is the reasonable likelihood of confusion, deception, or misleading of the ordinary unsuspecting purchaser. 15 U.S.C.A. §§ 1114–1120, 1126(g–i), 1127; see: Admiral Corp. v. Penco, 2 Cir., 1953, 203 F.2d 517, 520–521; Pagliero v. Wallace China Co., supra, 198 F.2d 339; Sunbeam Furniture Corp. v. Sunbeam Corp., supra, 191 F.2d at page 144; Stauffer v. Exley, supra, 184 F.2d 962; American Automobile Ins. Co. v. American Auto Club, 9 Cir., 1950, 184 F.2d 407; Lane Bryant, Inc. v. Maternity Lane, 9 Cir., 1949, 173 F.2d 559; Brooks v. Great Atlantic & Pacific Tea Co., 9 Cir., 1937, 92 F.2d 794; Hotels Statler Co. v. Chase, D.C.S.D.Cal.1952, 104 F.Supp. 533, 537; Morse-Starrett Products Co v. Steccone, D.C.N.D.Cal. 1949, 86 F.Supp. 796, 803, appeal dismissed, 9 Cir., 1951, 191 F.2d 197; Stork Restaurant v. Marcus, D.C.E.D. Pa.1941, 36 F.Supp. 90, 93; Comment, Trade Name Infringement as Unfair Competition, 40 Cal.L.Rev. 571 (1952).

■ Unauthorized use of another's mark or name, even in a non-competitive field, has been held to constitute "unfair competition"—unfair trade practice— where the object of the user is to utilize confusion of purchasers to trade on the other's reputation and good will, or where such is reasonably certain to result. Stork Restaurant v. Sahati, supra, 166 F.2d 348; Standard Brands v. Smidler, 2 Cir., 1945, 151 F.2d 34, 37; see: Hotels Statler Co. v. Chase, supra, 104 F.Supp. at page 537; Safeway Stores v. Sklar, D.C.E.D.Pa.1947, 75 F. Supp. 98, 103; Brooks Bros. v. Brooks Clothing of Cal., supra, 60 F.Supp. at page 451; Reconstruction Finance Corp. v. J. G. Menihan Corp., D.C.W.D.N.Y. 1938, 22 F.Supp. 180, 183, reversed on other grounds, 2 Cir., 1940, 111 F.2d 940, affirmed, 1941, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595; cf. Safeway Stores v. Dunnell, 9 Cir., 172 F.2d 649, 654, certiorari denied, 1949, 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719; Silvers v.

Russell, supra, 113 F.Supp. 119; Alhambra Transfer & Storage Co. v. Muse, 1940, 41 Cal.App.2d 92, 106 P.2d 63.

But where market competition is absent, there is usually far less likelihood of confusion in the minds of purchasers. Sunbeam Furniture Corp. v. Sunbeam Corp., supra, 191 F.2d at page 145; Affiliated Enterprises v. Rock-Ola Mfg. Corp., D.C.N.D.Ill.1937, 23 F.Supp. 3.

■ Considered from the visual aspect, plaintiff prints the word "Time" in black letters on its magazine cover with a red border, and defendant prints or paints the word "Time" in red letters on its trucks and advertising material There is no marked similarity in the type of lettering employed. Plaintiff uses pica-like, lightface letters; while defendant uses squatty, boldface letters. This visual dissimilarity is even greater than that between the words "The United States of America" and the words "One Dollar" appearing on the face of every $1 silver certificate.

Until 1952 defendant's use of the word "Time" apparently had caused no confusion, and defendant's change in that year from "T.I.M.E." to "Time", without separating periods, may indicate a purpose to capitalize on the public acceptance built up for plaintiff's mark and name. Some confusion may have arisen among those who carry over in their minds the red border of plaintiff's magazine cover to the red lettering of "Time" as now painted on defendant's trucks. Cf. Campbell Soup Co. v. Armour & Co., supra, 175 F.2d at pages 797–799.

Considered from the auditory aspect, the word "Time" is so common that it carries but highly doubtful connotation of plaintiff's sponsorship outside the publishing field. Not only are plaintiff and defendant not in competition, but their businesses are seen to be highly dissimilar, with plaintiff publishing a national magazine and defendant operating a regional trucking service.

The common nature of the word "Time" and the great dissimilarity in

plaintiff's and defendant's lines of business lead to the conclusion that the likelihood of confusion from defendant's use is *de minimis*, and that relief should for that reason be denied. There were, it is true, some misdirected letters and telephone calls, but these were from defendant's "purchasers" 15 U.S.C.A. § 1114, not plaintiff's. Moreover anyone who has referred to a directory with the aid of bifocals in search of an address or telephone number knows that such errors are not trustworthy evidence of confusion of source.

■■ The age-old policy of courts of equity argues always against the issuance of any unenforceable or otherwise ineffectual decree. The reasons sustaining this policy are especially cogent in determining whether the extraordinary writ of injunction should issue. As the Court long ago admonished in Truly v. Wanzer, 1847, 5 How. 141, 46 U.S. 141, 12 L.Ed. 88; "There is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing of an injunction." 5 How. 142, 46 U.S. at page 142.

■ Lastly the defense of laches raised by defendant should be noticed. After some of the misdirected telephone calls and letters had been received, in December of 1952 plaintiff opened correspondence with defendant on the subject. That correspondence, which continued until this action was instituted, clearly shows that plaintiff did not sleep on its rights. See: Menendez v. Holt, 1888, 128 U.S. 514, 523–525, 9 S.Ct. 143, 32 L.Ed. 526; Independent Nail & Packing Co. v. Stronghold Screw Products, supra, 205 F.2d at page 927.

Findings of fact, conclusions of law and judgment of dismissal on the merits for want of equity in favor of defendant and against plaintiff may be lodged with the Clerk pursuant to local rule 7 within ten days.