42 C.C.P.A.(Patents)

### The COCA–COLA COMPANY,
#### Appellant,

v.

### VICTOR SYRUP CORPORATION,
#### Appellee.

#### Patent Appeal No. 6075.

United States Court of Customs and Patent Appeals.

Dec. 21, 1954.

Rehearing Denied Feb. 8, 1955.

---

Julius R. Lunsford, Jr., Atlanta, Ga. (K. Wilson Corder, Atlanta, Ga., and Francis C. Browne, Washington, D. C., of counsel), for appellant.

No brief or appearance for appellee.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Judges.

COLE, Judge.

The Victor Syrup Corporation of New York filed two applications in 1947 to register "Nutri.Cola" on the principal register of the United States Patent Office as a trade mark applied to goods consisting of syrups, concentrates, and extracts for carbonated, non-alcoholic, non-cereal, maltless beverages, sold as soft drinks, one application being based on a claim to distinctiveness of the notation under section 2(f) of the Trade Mark Act of 1946, 15 U.S.C.A. § 1052(f), and the other, filed without reference to section 2(f), being for registration of "Nutri.Cola" in association with an ancillary ornamental background, i. e., a red and green rosette. The Coca-Cola Company, prior user and registrant by many years of the widely known and highly valuable trade mark "Coca-Cola," as applied to tonics, syrups, and beverages substantially similar to those of the applicant, entered its opposition to each of the aforesaid applications to register "Nutri.Cola" on the ground that applicant's marks so resembled opposer's mark that confusion in trade would likely result if applicant's marks were registered and, in addition, that applicant has been guilty of inequitable conduct and unclean hands in applying for several years past the words "Reg.U.S.Pat.Off." to the labels of its products carrying the marks now sought to be registered.

Testimony was taken by opposer and offered in the opposition proceeding instituted in the Patent Office. Applicant did not introduce any evidence or appear at the hearing. On the basis of the record before him, the Examiner-in-Chief affirmed the decision of the Examiner of Interferences, dismissing the opposition, and, in relation to the points raised in opposer's notices of opposition, held (1) that the marks in controversy, when considered in their respective entireties, were not confusingly similar either in appearance, sound, or meaning, nor (2) did the evidence satisfactorily indicate that confusion and deception of purchasers actually resulted because of similarity between the marks, and (3) that the use by applicant of the registration notice was not sufficiently unfounded to warrant rejection of the applications. The Examiner-in-Chief further held that opposer's allegation to the effect that applicant had deliberately engaged in a course of conduct to encourage and facilitate passing off its product for the products of opposer was not substantiated by the evidence of record, and that in any event such issue related exclusively to the law of unfair competition and was not material in an opposition proceeding. Coca-Cola Company v. Victor Syrup Corporation, 97 U.S.P.Q. 478.

In appealing from the decision of the Examiner-in-Chief, the opposer states in its brief that "the single and precise question involved is whether the unfair, deceptive and fraudulent use of 'Nutri.Cola' in commerce prior to and during the pendency of the application for registration is a legal defense to the application to register." While the question thus presented is primarily directed to a determination of the availability of a defense to opposer based on applicant's alleged unclean hands and other inequitable conduct in promoting the sale of "Nutri.Cola" by intentionally passing off, and inducing others to pass off, said product on customers ordering "Coca-Cola," the issue so framed is a considerable enlargement on the only ground of opposition set forth in the formal pleadings filed in the Patent Office to which it could possibly refer. That ground, supra, reads as follows:

"4. Applicant is guilty of inequitable conduct and unclean hands in that long prior to the filing of this application to register its alleged mark applicant's labels carrying the mark have borne the words 'Reg.U.S.Pat.Off.' and said labels are presently being so marked as evidenced by the drawings filed in the application." [Italics ours.]

Although we are somewhat reluctant to permit the opposer to unduly broaden the scope of its opposition, and might construe the above ground of opposition as limiting the sought after application of equitable principles to the alleged misuse of the registration notice, and thus limit our discussion herein, we will give brief expression to our views concerning the entire record as presented.

■ Considering first the alleged misuse by applicant of the registration notice, it appears that applicant owns registrations consisting principally of the notation "Nutri", as applied to the same class of goods as those for which it now seeks registration, and has used such notation with the words "Reg.U.S.Pat. Off." and with the further word "Cola," the combination of which it did not own, the notice being centered beneath the compound word, "Nutri.Cola." Applicant's explanation for such use was that to otherwise use the notice with its registered marks would render its labels asymmetrical in appearance. No showing of bad faith or intention to mislead the public was evidenced by the record. On the basis of the foregoing facts, the Patent Office accepted applicant's explanation, and we are in agreement with that holding. See A. F. Part, Inc., v. Sormani, 80 F.2d 78, 23 C.C.P.A., Patents, 773.

■ Secondly, it is now clear to us that the word "Cola" is descriptive of a type of drink and is not subject to exclusive appropriation. Dixie-Cola Laboratories, Inc., v. Coca-Cola Company, 4 Cir., 117 F.2d 352. That "Nutri" and "Coca" are manifestly distinguishable in appearance, sound, and meaning cannot seriously be disputed, and when the marks are viewed in their entireties, as they must be in the ultimate determination, it does not seem likely that "Nutri.Cola" and "Coca-Cola" (no other features of similarity being present) will be confused by purchasers.

■ Opposer urges that the record convincingly demonstrates that actual confusion and deception of purchasers has resulted because of the similarity between the marks, and attention is drawn to the testimony of witnesses within its employ who conducted extensive surveys of retail outlets. Specifically, it is the opposer's position that the testimony of its own investigating witnesses establishes that a large number of attendants in soda fountains, bars, and taverns actually confused "Nutri.-Cola" with "Coca-Cola" by serving the former beverage in response to calls for the latter. It is also asserted by opposer that in a further survey conducted by its investigating witnesses a number of retail dealers admitted that employees in their stores similarly confused the two products in serving customers.

Without attempting detailed review of this evidence, or directing comment as to the basic unreliability of the evidentiary aspects of ex parte surveys, or to the shortcomings inherent in the hearsay evidence offered and received in the record, it is sufficient to say that we are not satisfied that the alleged actual confusion has been proved. Among other reasons therefor, opposer's witnesses testifying that numerous counter attendants had served "Nutri.Cola" in response to orders for "Coca-Cola" merely assumed, without factual determination, that such service was the result of actual confusion between the marks, and no allowance was made for the distinct possibility that the substitution was willfully made, or else, the store not handling "Coca-Cola," served "Nutri.Cola" and did not inform of that fact.

■■ Opposer's brief is replete with contentions to the effect that applicant engaged in a fraudulent course of conduct in selling its products for those of opposer, and that applicant encouraged a commercial atmosphere which gave it an unfair advantage over opposer in that dealers were induced to pass off "Nutri.Cola" on orders for "Coca-Cola" and Coke," the latter notation being another registered and widely known trade mark of opposer. Opposer maintains that this conclusion is irresistible

from a review of the evidence of record, and that registration of applicant's marks will give new and added vitality and effectiveness to "Nutri.Cola" as an instrument to further prosecute the immoral competition it has been engaged in for the past several years. In accordance with its claimed proof of the above contentions, opposer urges that registration of applicant's marks be denied.

The tribunals below considered the evidence in support of opposer's argument relating to alleged unfair methods of competition practiced by applicant, but concluded that the testimony did not substantiate opposer's charge, as herein previously stated, and further that inasmuch as the question pertained to unfair competition it was not properly part of the statutory issues for decision in an opposition proceeding.

We agree with the Patent Office that the evidence does not warrant the construction placed thereon by opposer. While it may be true that applicant's agents, in unknowingly discussing sales of "Nutri.Cola" with several of opposer's investigators under the guise of retail dealers, did not deem it necessary to volunteer the information that its products were not "Coca-Cola" or "Coke," there is no showing that applicant deliberately attempted, either by positive actions or by calculated negative conduct, to create a false impression that the two products were the same. On the contrary, applicant's agents readily admitted upon slight inquiry that a definite distinction existed between "Nutri.Cola" and "Coca-Cola," and we are unable to find any evidence in the record that applicant "induced" retail dealers or their employees to sell the former beverage for and as the latter. Manifestly, the applicant cannot lose its right to register its lawful trade marks because others may choose, for reasons entirely unassociated with applicant's conduct or confusing similarity between the marks, to sell one product in response to orders for another.

■ While the jurisdiction vested in the Patent Office by the Congress of the United States is limited to the statutes under which it was designed to operate, and matters relating to unfair competition as such are not directly germane to its essential statutory function in trade mark registration cases, nevertheless, as was never more forcibly stated by us in California Canneries Co. v. Lush'us Products Co., 49 F.2d 1044, 1046, 18 C.C.P.A., Patents, 1480, "in the proceedings of the tribunals of the Patent Office, and in the exercise of our jurisdiction, there should be constantly kept in mind the objects of the statute, which are the promotion of the interests of the trade and commerce of the country, and the protection of trade-marks which are lawfully used or owned by those engaged in such trade and commerce." Underlying these acknowledged principles is the paramount necessity of protecting the public from deception in the purchase of its goods. Although the Trade Mark Act of 1946, 15 U.S.C.A. § 1051 et seq. may not literally comprehend within its varied provisions the application by the Patent Office authorities of all legal and equitable principles relating to the law of trade marks and unfair competition, it was certainly not the intention of Congress to aid one even temporarily who schemes through use of his mark to promote his own fraudulent interests to the ultimate detriment of the buying public. The public interest requires that no obligation be imposed upon the Patent Office to register a mark when it is apparent that such registration will provide a protective cover under which the registrant can better proceed to flout the law and practice deceit upon the public. These essentials to the proper function of the Patent Office under the statute must be encouraged and in no sense diminished. The Patent Office is one of our most important governmental agencies. The dignity it deserves has been spelled out by Congress in language we believe intended to be liberally interpreted to accomplish its purposes.

In California Packing Corp. v. Sun-Maid Raisin Growers of California, 64

F.2d 370, 20 C.C.P.A., Patents, 968, we said (Headnotes 1 and 2):

1. "A contract between opposer and a company through which appellee indirectly gained title to its trade-mark, said contract being invoked to limit the use of appellee's trade-mark to certain specified goods, *held* to be material to appellee's right to register the mark for use on other goods, and that the Commissioner of Patents erred in holding that the legal effect of such contract could not be considered by him."

2. "Appellee having urged that the Patent Office has no jurisdiction to decide the controverted questions of the law of contracts, *held* that in passing upon questions within their jurisdiction, it is the duty of the Patent Office tribunals to apply legal and equitable principles in their determination."

Although that case was decided without reference to any fraud upon the public, but solely because of the contract, it is of obvious pertinence herein.

As hereinbefore indicated, opposer's opposition is without merit, and the evidence adduced in the record before the Patent Office not sustaining a charge of unlawful misconduct against applicant, or warranting the application of any additional jurisdiction than that expressed in the decision of the Examiner-in-Chief, it is accordingly affirmed.

Affirmed.

WORLEY, Judge, concurs in conclusion.

On account of illness, GARRETT, Chief Judge, did not participate in the hearing or decision of this case.