MILES LABORATORIES, INC., Plaintiff,

v.

Henry J. FROLICH, d.b.a. Encino Chemicals, Defendant.

No. 337–60 MC.

United States District Court
S. D. California,
Central Division.

June 8, 1961.

Lyon & Lyon, by Reginald E. Caughey, Los Angeles, Cal., Woodson, Pattishall & Garner, by Lewis Garner, Chicago, Ill., for plaintiff.

Henry J. Frolich, in pro. per.

CROCKER, District Judge.

Miles Laboratories, Inc., an Indiana corporation (having its principal place of business in that state and doing business in the State of California)[1] has, since 1930, been continuously engaged in the manufacture, advertising, distribution and sale of an anti-acid effervescent preparation, under the trade-mark Alka-Seltzer. The trade-mark has been duly registered under the federal trade-mark acts of 1905, 1942 and 1946[2] and under appropriate California statutes. Reg. No. 510,330 has now become incontestable under the provisions of 15 U.S.C.A. § 1065.

Plaintiff has sold millions of dollars worth of its product on a nationwide scale since 1930, or shortly thereafter.

Defendant, Henry J. Frolich, is a citizen of California, doing business under the name of Encino Chemicals. At present, defendant produces limited quantities of home remedies. Among these is a medical preparation of the same general nature and designed for the same purposes as plaintiff's Alka-Seltzer product, which defendant sells under the name Milk-O-Seltzer.

Miles Laboratories seeks to have this court enjoin defendant from using the name Milk-O-Seltzer on his products, and requests an accounting for damages.

The court holds that the name Milk-O-Seltzer does not infringe the trade-mark Alka-Seltzer. Injunction and accounting are denied.

### Jurisdiction

Congressional power to enact legislation to protect trade-marks is derived from the commerce clause of the Constitution and not from specific provisions as in the case of patents or copyrights, Trade-Mark Cases, 1879, 100 U. S. 82, 25 L.Ed. 550; Fairway Foods, Inc. v. Fairway Markets, 9 Cir., 1955, 227 F.2d 193, 196, 197, and see Commentary on Lanham Trade-Mark Act by Daphne Robert, 15 U.S.C.A.

Being so derived, protection under the Lanham Act, 15 U.S.C.A. §§ 1051–1127, is limited to "any person who shall, *in commerce * * *"* do the prohibited acts (§ 1114).[3] "Commerce" is defined as "all commerce which may lawfully be regulated by Congress," (§ 1127).

Although jurisdiction of the federal courts cannot rest solely upon stipulation [People's Bank of Belville v. Calhoun, 1880, 102 U.S. 256, 26 L.Ed. 101] or waiver [United States v. Griffin, 1937, 303 U.S. 226, 58 S.Ct. 601, 82 L.Ed. 764] this court has jurisdiction based on the Lanham Act. Defendant admitted allegations of the complaint and stated in his deposition that he has sold his product in interstate commerce. Moreover, defendant has applied for registration of Milk-O-Seltzer alleging that it has been used in interstate commerce. This use was not extensive, but defendant indicated that he intended to expand his production and sales. Under such circumstances the court has jurisdiction. A single *actual* sale or use by

---

1. Co-plaintiff Miles California Company, a California corporation, merged into plaintiff Miles Laboratories, Inc. during the course of the trial. Accordingly, Miles California Company has been dismissed as a party to the action.

2. Registered June 9, 1931, Reg. No. 283,-831; May 31, 1949, Reg. No. 510,330;

September 16, 1958, Reg. No. 667,053 respective to the various acts.

3. This section later adds that the intent of Congress is "to protect registered marks used in such commerce from interference by State, or territorial legislation."

defendant in another state would be sufficient interstate commerce to give federal protection under the Act, New England Duplicating Co. v. Mendes, 1 Cir., 1951, 190 F.2d 415, 417. See, also, Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962, and Moore's Federal Practice, vol. 1, pp. 610–611.

### Principal Issue

The Lanham Act protects registered marks against an infringer's use in commerce, without consent, where "such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services," (§ 1114).[4]

Hence, the issue here is whether or not the name Milk-O-Seltzer, when affixed to products used for the relief of headaches and upset stomach, is likely to cause confusion, mistake or deception in the minds of purchasers, Time, Inc. v. T. I. M. E., Inc., D.C.S.D.Cal. 1954, 123 F.Supp. 446, 454, and numerous cases cited there. Or again, whether a consumer, using that degree of care which a reasonable man would use in purchasing goods of this description,[5] intent on purchasing a product for the relief of headaches and upset stomach would buy Milk-O-Seltzer thinking that product was made or endorsed by Miles Laboratories.

■ Essentially, the question is one of fact, G. D. Searle & Co. v. Chas. Pfizer & Co., 7 Cir., 1956, 231 F.2d 316, to be decided, not by expert opinion, but by the Court, Standard Oil Co. v. Standard Oil Co., D.C.Wyo.1956, 141 F. Supp. 876, 890, affirmed 10 Cir., 252 F. 2d 65; Societe Anonyme, etc. v. Julius Wile Sons & Co., supra; Callman, Unfair Competition and Trade-Marks, 2d Edition, p. 1570.

Mindful that the twofold purpose of the Act is (1) "To protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get," and (2) to protect the owner who has spent time and money in his investment "from its misappropriation by pirates and cheats," Senate Committee Report, 1946, Cong.Serv. p. 1274,[6] the court has considered the following factors:

### Trend of the Cases

It has been correctly pointed out that little can be gained from the citation of specific cases since each must be decided on its particular facts, Green v. Ludford Fruit Products, D.C.S.D.Cal.

4. An excellent summary of the pertinent issues by Judge Kaufman appears in Societe Anonyme, etc. v. Julius Wile Sons & Co., D.C.S.D.N.Y.1958, 161 F.Supp. 545, 547, holding that "Frappemint" did not infringe "Freezomint":

"The touchstone of infringement is a similarity 'likely to cause confusion or mistake or to deceive purchasers.' 60 Stat. 437 (1946) 15 U.S.C.A. § 1114(1) (a). It is not similarity itself which provides the basic test but whether such similarities as may appear from a comparison of the two marks will provoke confusion among the buying public. This determination that I am called upon to make—whether confusion is or is not likely to arise—does not readily lend itself to resolution by scientific appraisement or comparison. Rather, a finding on infringement is by necessity a subjective determination by the trial judge based on his visceral reactions as to the likelihood of confusion the allegedly infringing mark will create in the minds of the public. As noted by one court, in situations of this kind the Judge 'can only contemplate, speculate, and weigh the probabilities of deception arising from the similarities.' Colburn v. Puritan Mills, Inc., 7 Cir., 1939, 108 F.2d 377, 378."

5. Not merely "careless and indifferent buyers," S. C. Johnson & Son, Inc. v. Johnson, 6 Cir., 1959, 266 F.2d 129, 141, certiorari denied 361 U.S. 820, 80 S.Ct. 65, 4 L.Ed.2d 65. See, also, Pennzoil Co. v. Crown Central Petroleum Corporation, D.C.D.Md.1943, 50 F.Supp. 891, 900, affirmed 4 Cir., 140 F.2d 387, certiorari denied 322 U.S. 750, 64 S.Ct. 1261, 88 L.Ed. 1581, holding that "Greenzoil" does not infringe "Pennzoil."

6. See also the general discussion by Goodman, J., in Springfield Fire & Marine Ins. Co. v. Founders' Fire & Marine Ins. Co., D.C.N.D.Cal.1953, 115 F.Supp. 787, 792.

1941, 39 F.Supp. 985, 988 and 989, appeal dismissed 9 Cir., 126 F.2d 468.[7] However, it is important to note the trend of decisions within the circuit by which this court is bound, Q-Tips, Inc. v. Johnson & Johnson, 3 Cir., 1953, 206 F.2d 144, 147, 148, certiorari denied.[8]

Recent trade-mark cases in this circuit have involved virtually identical marks on different products, Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 1951, 191 F.2d 141, rehearing denied 9 Cir., 191 F.2d 731; Sunbeam Lighting Co. v. Sunbeam Corporation, 9 Cir., 1950, 183 F.2d 969, certiorari denied 340 U.S. 920, 71 S.Ct. 357, 95 L.Ed. 665; Time, Inc. v. T. I. M. E., supra; or marks on business establishments, where the customers might be different, Stork Restaurant, Inc. v. Sahati, 9 Cir., 1948, 166 F.2d 348; Brooks Bros. v. Brooks Clothing of California, Ltd., D.C.S.D.Cal.1945, 60 F.Supp. 442, affirmed, adopting the opinion of the District Court, 9 Cir., 158 F.2d 798, certiorari denied 331 U.S. 824, 67 S.Ct. 1315, 91 L.Ed. 1840; or a store and a product, Safeway Stores, Inc. v. Dunnell, 9 Cir., 1949, 172 F.2d 649, certiorari denied 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719.

The only recent case arising within this circuit which the court has found (and none was cited) where the products were very similar and the question turned on the similarity of the names is that of Vita-Var Corp. v. Alumatone Corp., D.C.S.D.Cal.1949, 83 F.Supp. 214. In that case, Judge Yankwich, later Chief Judge of this District, held that "Alumatone" was not confusingly similar to "Alumikote" where the names were both applied to aluminum paint products. In that case, as here, part of the names was identical; there was a vowel sound which might be slurred to sound similar, and the third syllable was different. There, as here, the products were both to be used for the same purpose, although they were in different form. There, one product was a ready-mixed aluminum paint whereas the other was a flaked pigment which was to be mixed with an attached liquid; here, one of the products consists of tablets which are to be dissolved in water, and the other, a powder which is similarly dissolved. There, as here, see infra, there is no indication that the labels were similar. If anything, the case before this court now is a stronger one for denying relief since part of the alleged infringing mark is a familiar English word which is unlikely to be confused.

Until our circuit more clearly defines these cases, it seems that the Vita-Var case is more indicative of the position of this circuit than the decisions of other circuits which may go further in granting trade-mark protection. If this court were sitting in the Third Circuit, it might feel constrained by the opinion in Q-Tips, Inc. v. Johnson & Johnson, supra;[9] or in the Second Circuit, by Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 1960, 281 F.2d 755;[10] or in the Seventh Circuit, by G. D. Searle & Co. v. Chas. Pfizer & Co., Inc., 1959, 265 F.2d 385, certiorari denied 361 U.S. 819, 80 S.Ct. 64, 4 L.Ed. 2d 65;[11] to reach a different result because of a possible trend in those circuits. Admittedly, courts of this cir-

---

7. See also the apparently irreconcilable cases cited in Bon Ami Co. v. McKesson & Robbins, Inc., 1938, 93 F.2d 915, 916, 25 CCPA 826.

8. Certiorari denied (Two cases) 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 and 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086.

9. See also Morgenstern Chemical Co. v. G. D. Searle & Co., 3 Cir., 1958, 253 F.2d 390, certiorari denied 358 U.S. 816, 79 S. Ct. 25, 3 L.Ed.2d 58.

10. But see Upjohn Co. v. Schwartz, 2 Cir., 1957, 246 F.2d 254, 262 ("Syrocol" does not infringe "Cheracol"); Warner Brothers Co. v. Jantzen, Inc., 2 Cir., 1957, 249 F.2d 353 ("Curvallure" does not infringe "A'Lure") ; and the very persuasive Societe Anonyme, etc. v. Julius Wile Sons & Co., D.C.S.D.N.Y. 161 F. Supp. 545, supra.

11. Another opinion on this case is cited, supra.

cuit have cited each of the above with approval for the general proposition that higher standards of fair business are now required.[12] However, the court has found no case in this circuit holding marks as dissimilar as the ones in this case to be infringing.

Miles Laboratories itself has made numerous forays into the courts to protect their Alka-Seltzer name and have met with varying success. See, for example, American Bio-Chemical Corporation v. Coe, D.C.D.C.1943, 51 F.Supp. 430 (wherein "Vita-Seltzer" not allowed registration); Miles Laboratories, Inc. v. United Drug Co., 1940, 112 F.2d 814, 27 CCPA 1273 (wherein "Rex-Seltzer" was allowed registration); Miles Laboratories, Inc. v. Goodfriend, Comm.1955, 106 U.S.P.Q. 336 (wherein "Carba-Seltzer" was refused registration).

The court is particularly impressed with the result in Miles Laboratories v. Pepsodent Co., Cust. & Pat.App.1939, 104 F.2d 205. Although decisions of the Court of Customs and Patent Appeals have no binding effect on this court, they carry particular weight since they are decided by a three judge court which specializes in this type of case. In Pepsodent, the court held "Pepso-Seltzer" registerable as not confusingly similar to "Alka-Seltzer" when affixed to similar products. As in the Alumatone case, supra, the alleged infringing mark was considerably closer than the mark in the case under consideration, since the middle vowel was connected to the first syllable rather than separated by a hyphen as in this case. Moreover, the first syllable there does not have the descriptive quality which "milk" has in the present case.

### Oral Similarity

Emphasizing that drug products are frequently requested orally, plaintiff has attempted to show that the names sound alike. Plaintiff asserts that the last syllables of the words here are identical and the first two—"Alka" and "Milk-O"—are so similar that if the "O" in "Milk-O-Seltzer" is slurred and the "M" is not pronounced, "Milk-O-Seltzer" comes out "Ilka-Seltzer." Merely relating the steps indicates the weakness of the argument. Moreover, "milk" is a familiar word. Hence, it is extremely unlikely that such mispronunciation would occur.

Plaintiff relies on G. D. Searle & Co. v. Chas. Pfizer & Co., Inc., 7 Cir., 1959, 265 F.2d 385, where it was held that the name "Bonamine" infringed the name "Dramamine."[13] Even if this court considered the opinion of the Seventh Circuit binding, the facts there are distinguishable from those here, not only because the names there were more similar, but also because there both names were somewhat unusual. Hence, a potential buyer, in searching for the right word, might stumble upon the infringing mark. No such unfamiliarity is present here. The word "Alka-Seltzer" is a household word, as are the words "milk" and "seltzer."

Although cognizant of the implication that the court would place a more difficult task of showing confusing similarity upon a trade-mark owner whose mark is very well known than on one whose mark is unfamiliar, such a difference is inherent in the "confusingly similar" test. The Court is not required to consider the marks in a vacuum, but rather to assess the actions of human consumers in the market place. See Societe Anonyme, etc. v. Julius Wile Sons & Co., supra.

█ The only genuine similarity between the marks here is the use of the word "seltzer", as the last syllable of

12. See, for example, Ramirez & Feraud Chili Co. v. Las Palmas Food Co., Inc., D.C.S.D.Cal.1956, 146 F.Supp. 594, at page 605, citing Q-Tips, Inc. v. Johnson & Johnson, affirmed per curiam, 9 Cir., 245 F.2d 874, certiorari denied 355 U.S. 927, 78 S.Ct. 384, 2 L.Ed.2d 357.

13. The same mark was considered in this district in G. D. Searle & Co. v. Institutional Drug Distributors, Inc., 1955, 151 F.Supp. 715, holding that the name "Dram-A-Mine" was confusingly similar to "Dramamine."

both. As pointed out in Upjohn Co. v. Schwartz, 2 Cir., 1957, 246 F.2d 254, 262, such similarity is not uncommon in drug compounds. The word "seltzer" is not registerable since it is a descriptive word. See 15 U.S.C.A. § 1052 (e); Miles Laboratories v. Pepsodent Co., supra. It was specifically disclaimed in Miles' original registrations. Although the Lanham Act contains provisions allowing descriptive marks registration in the "secondary register," and possible trademark significance through secondary meaning, such seems unlikely here, Rohr Aircraft Corp. v. Rubber Teck, Inc., 9 Cir., 1959, 266 F.2d 613, 621.

### Visual Similarity

There is no possibility that any purchaser might confuse the two products as now packaged and sold if they were both seen at the market place. See Skinner Mfg. Co. v. General Foods Sales Co., Inc., D.C.Neb.1943, 52 F.Supp. 432, 450.[14] Plaintiff now, and apparently from the first,[15] has packaged its products in an oblong box, upon which the word Alka-Seltzer is written in large white letters against a dark blue background, which background is bordered by a white strip and then a broader powder blue frame. Inside is a long cylindrical jar containing the tablets with a label similar to that on the outside box.[16]

Defendant, on the other hand, packages his product without any outside box, in a brown colored glass bottle with a yellowish label. The shape of the bottle is in no way similar to that of plaintiff. Milk-O-Seltzer is written in dark blue block letters completely dissimilar to the lettering which Alka-Seltzer uses. See Time, Inc. v. T. I. M. E., Inc., D.C., 123 F.Supp. 446, 456, supra; contrast Sunbeam Lighting Co. v. Sunbeam Corporation, 9 Cir., 183 F. 2d 969, 971, supra.

Defendant seems purposefully to have avoided visual similarity. Even if anyone were to make the mispronunciations suggested by plaintiff and by mistake order Milk-O-Seltzer, he would undoubtedly reject the latter upon seeing the package.

Plaintiff suggests that unless relief is granted, defendant may change his packaging so as to copy plaintiff. It will be soon enough to decide such a case of "palming off" when it arises.

### Similarity of Products

Unlike the situation in Time, Inc. v. T. I. M. E., Inc., supra, both products in this case are sufficiently similar so that if the names were genuinely likely to confuse, the injunction would issue. Alka-Seltzer is advertised as an "Effervescent analgesic alkalizing tablet" which is claimed as a cure-all for upset stomach, headache and aching muscles. As sold it appears in white discs which are dissolved in water.

Milk-O-Seltzer is claimed to be an "alkalizing bromide, with aspirin" for "stomach upset, headache and nervous tension." It is sold in powder form which is dissolved in water.

Plaintiff correctly contends that the fact that the products are similar, but not identical, is all the more reason for them to confuse the public, Miles Laboratories, Inc. v. Goodfriend, supra, 106 U.S.P.Q. 336, 337. Were the names and packaging more similar so that one might appear to be derived from the other, plaintiff's point might be persuasive. It is not here.

### Similarity of Customers

Plaintiff points out that both products might be sold to the same or similar customers and that these customers probably do not exercise par-

---

14. Affirmed 8 Cir., 143 F.2d 895, certiorari denied 323 U.S. 766, 65 S.Ct. 110, 89 L.Ed. 613.

15. Plaintiff submitted an exhibit showing examples of its advertising.

16. Plaintiff packages other quantities of Alka-Seltzer, apparently in similar wrappings.

262

ticular caution in purchasing. Although the purchasers of patent medicines are "casual" rather than "discerning," Grove Laboratories, Inc. v. Approved Pharmaceutical Corporation, D.C.N.D.N.Y.1957, 149 F.Supp. 86, 90; Callman, supra, vol. 3 pp. 1383–1392, this factor is not decisive unless the names are confusingly similar.

## Actual Confusion

■ As might be expected from the above discussion and from the fact that Mr. Frolich is such a small producer and has been in business for such a short time, plaintiff's counsel, despite meticulous preparation, was not able to cite a single instance of actual confusion. It is familiar trade-mark law that actual confusion or loss is not the test in determining infringement, Stork Restaurant, Inc. v. Sahati, 9 Cir., 166 F.2d 348, 359, supra; Durable Toy & Novelty Corporation v. J. Chein & Co., Inc., 2 Cir., 1943, 133 F.2d 853, certiorari denied 320 U.S. 211, 63 S.Ct. 1447, 87 L.Ed. 1849 but it has sometimes been pointed out that where actual confusion is shown the second comer must use considerable care in distinguishing his product name, Horlick's Malted Milk Corporation v. Horluck's, Inc., 9 Cir., 1932, 59 F.2d 13, 16.

## Plaintiff's Case

■ In order to show likelihood of confusion, plaintiff relied upon the results of a reaction test, conducted among consumers in the Los Angeles area. Various trained interviewers stopped persons in stores and on the street, showed some a bottle of Milk-O-Seltzer as it would appear on counters, and others, a box upon which a Milk-O-Seltzer label had been affixed (but in neither case was a bottle of Alka-Seltzer shown, nor were the tests conducted near counters where Alka-Seltzer was clearly visible), and asked them: "What other brand name do you think this company uses?" Each of the answers was recorded on a separate sheet and these voluminous exhibits were submitted.

A professor of psychology testified that the method of testing and sampling and selecting and training interviewers was as fair and reasonable as could be devised.

All of this evidence was considered admissible over vague objections of Mr. Frolich. Although there is authority to the contrary, see Standard Oil Co. v. Standard Oil Co., 10 Cir., 252 F.2d 65, 75, supra, this court is of the opinion that such evidence is admissible hearsay. As in the Standard Oil case, the courts sometimes consider that the credibility of the persons taking the interview, and not that of the subjects who are questioned, is at issue.

However, in order for the evidence to be relevant, the trier of fact must assume that each of the subjects was telling the truth. In essence, each of the subjects who answered as Miles wished them to answer was saying, "I think that the maker of Milk-O-Seltzer may also make Alka-Seltzer." From these statements, the trier must make the inferential step that the statements were true reflections of the subject's mental reactions. The so-called hearsay dangers evolve from this inferential step since the subjects are not under oath nor in court for cross-examination.

■ However, it is familiar law that hearsay evidence is admissible to show the state of mind of the extrajudicial declarant, where such is relevant, Marcalus Manufacturing Co. v. Watson, D.C.1957, 156 F.Supp. 161, 164, affirmed Per Curiam, 103 U.S.App.D.C. 299, 258 F.2d 151; Bridge v. Ruggles, 1927, 202 Cal. 326, 260 P. 553; and note Rule 43(a) F.R.Civ.P., 28 U.S.C.A. Even without this convenient pigeonhole, hearsay is admissible where, as here, there is little danger that all of the subjects would falsify their feelings and it would be impossible for the court to consider the testimony of each. For more detailed analysis, see "Public Opinion Surveys as Evidence: The Pollsters Go To Court", 66 Harv.L.R. 498.

Although admissible, the court does not consider such tests to be persuasive (compare test here with that in Lever Bros. Co. v. Butler Mfg. Co., 1940, 111 F.2d 910, 912, 27 CCPA 1215; see also Coca-Cola Co. v. Victor Syrup Corp., 1954, 218 F.2d 596, 599, 42 CCPA 751; Callman, Unfair Competition and Trade-marks, supra, vol. 3. pp. 173, 174). The trade-mark Alka-Seltzer is such a common name that it seems likely that any other name combining the word "seltzer" would suggest Alka-Seltzer to a substantial proportion of the population. As has been noted, the word "seltzer" is not registerable.

Again, the court is mindful of the difficult position in which this last point places the owner of a well-known name in trying to establish evidence of confusion between his name and that of an alleged infringer. Although the test is entitled to some weight, trade-mark litigation does not consist of a word association game, but rather a balancing consideration between the desirability of preventing possible confusion and the unfettered use of the English language. The latter must give way only when a *court* decides that there is likelihood of confusion.

## Motion Pictures

Plaintiff made sound motion pictures of some of the reaction test interviews. So long as they are properly authenticated and portray the situations as they actually occurred, the court does not think there is any serious question as to their admissibility, both as to the visual evidence provided and the audio evidence (of equal importance here.)[17] Of course, there is always the problem of photographic trickery by which an unscrupulous counsel might distort the pictures or sound, Harmon v. San Joaquin Light & Power Corporation, 1940, 37 Cal.App.2d 169, 174, 98 P.2d 1064. Here, counsel seemed meticulous in insuring that the pictures were an accurate portrayal of the relevant subjects.

The court considers these pictures no more persuasive than the tests themselves, supra.

## Defendant's Intent

Plaintiff questioned why defendant found it necessary to select, with all of the language from which to choose, any name which has even arguable similarity to another familiar name. Defendant denied that he used the name in order to benefit from the Alka-Seltzer trademark.

Intent to deceive the public is not a material element in an allegation for trade-mark infringement, Stork Restaurant, Inc. v. Sahati, 9 Cir., 166 F.2d 348, 360, supra, although it is necessary to prove intent in order to recover profits or damages under the Lanham Act § 1114(1) (b) where the goods are substantially different. A number of cases state flatly that "evidence of conscious imitation" or "intent of the actor" are important in establishing likelihood of confusion, Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 2 Cir., 281 F.2d 755, 758, 759, supra, and cases cited there. This court is unable to find anything in the Act which suggests that the intent of the alleged infringer is relevant, except for the trier of fact to infer that because the second comer thought he would benefit, he must have expected some confusion as to source. Impliedly, this places him in the position of an expert testifying against himself. See Maternally Yours, Inc. v. Your Maternity Shop, Inc., 2 Cir., 1956, 234 F.2d 538, footnote 3, at page 543.

Assuming that defendant's intention is of this limited weight, the court is not convinced that defendant here had such an intention. Mr. Frolich consistently denied any intent to infringe. This intent could be presumed from infringement, Standard Oil Co. v. Standard Oil Co., 10 Cir., 252 F.2d 65, 76, supra, but to do so here would be circular.

17. For extended discussion of these subjects, see, for motion pictures, 62 A.L.R. 2d 686; for sound reproductions, 58 A.L.R.2d 1024.

Rather, defendant contended that the name Milk-O-Seltzer was purely descriptive of the product. He testified that his product contained "approximately 63 per cent milk and lactose * * *. It tastes like milk; it is milk and seltzer," [Reporter's Transcript, p. 119]. He contends that it was necessary to place the letter "O" between "Milk" and "Seltzer" in order, (1) to have the name nondescriptive so that it could be listed in the "principal register." See 15 U.S.C.A. § 1052(e); Brooten v. Oregon Kelp Ore Products Co., 9 Cir., 1928, 24 F.2d 496; Travel Magazine, Inc. v. Travel Digest, D.C. S.D.N.Y.1961, 191 F.Supp. 830, 832; and (2) to avoid difficulties with the Pure Food and Drug Administration. Although the court has no desire to decide either of these points, both are arguable. There is no reason why defendant should have incurred the expense and trouble of litigation when the simple expedient here was readily available. See Canal Co. v. Clark, 1871, 13 Wall. 311, 80 U.S. 311, 20 L.Ed. 581; also, see many cases cited in Skinner Mfg. Co. v. General Food Sales, Inc., D. C., 52 F.Supp. 432, 445, supra.

It should also be noted that the word "milk" was used extensively throughout defendant's products and advertising as indicated by his exhibits. Finally, the complete lack of similarity of packaging suggests strongly that defendant had no intent to infringe.

### Other Theories

Having determined that the name "Milk-O-Seltzer" is not confusingly similar to "Alka-Seltzer" within the test of the Lanham Act, and that defendant did not intentionally attempt to infringe plaintiff's trade-mark or deceive the public, it is not necessary to consider possible recovery under California trademark law, or state or federal actions for unfair competition. The tests for trade-mark violation are substantially identical. If anything, protection is more easily obtained under the Lanham Act. See Time, Inc. v. T. I. M. E., Inc., supra;

Audio Fidelity, Inc. v. High Fidelity Recordings, Inc., 9 Cir., 1960, 283 F.2d 551, 557; Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 191 F.2d 141, 145, supra; Winfield v. Charles, 1946, 77 Cal.App.2d 64, 175 P.2d 69; Rest. Torts, 1938, § 717, California annotation, 1957.

### Conclusion

Judgment shall be entered denying plaintiff's prayer for injunction and accounting. Defendant may recover the costs of this action.

The foregoing opinion shall serve as findings of fact, conclusions of law and judgment for the purposes of Local Rule 7, West's Ann.Code.