49 CCPA

**ELIZABETH ARDEN SALES CORPORATION, Appellant,**

v.

**FABERGE, INC., Appellee.**

**Patent Appeal No. 6826.**

United States Court of Customs and Patent Appeals.

July 11, 1962.

Howard A. Rosenberg, New York City, for appellant.

James F. Hoge, Rogers, Hoge & Hills, Lenore B. Stoughton, Alfred P. O'Hara, New York City, and E. F. Wenderoth, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, RICH and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

Appellant-applicant has appealed the decision of the Trademark Trial and Appeal Board which sustained appellee-opposer's opposition to the application for registration of the mark "CREME EXTRORDINAIRE"[1] for a "Creamy Emulsion for use as a Cosmetic Face Cream." 129 USPQ 237. October 11th, 1957 is stated in the application as the date of first use in interstate commerce by applicant. The opposition is predicated upon opposer's use of the word "EXTRAORDINAIRE," on a range of cosmetic products which include inter alia, perfumes, colognes, bath products, aftershave products, and shaving cream.

Opposer adopted and began to use EXTRAORDINAIRE in connection with its sales of perfumes and colognes in 1938. Since 1948 EXTRAORDINAIRE has appeared on the bottles of cologne sold by opposer and appeared in advertisements showing the cologne bottle. During the years 1957–1959, inclusive, opposer's total cologne sales were between 12,000,000 and 15,000,000 bottles. Later,

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. An amendment to the application filed Feb. 27, 1959 by applicant states:

"The notation CREME EXTRORDINAIRE cannot be literally translated as the word EXTRORDINAIRE is not the French word for extraordinary as that word has the letter 'a' after the first letter 'r', to wit: Extraordinaire. However, it is admitted that the mark is extremely close to the French word and applicant therefore asks that the application be amended by adding thereto the following:

"'The mark is, substantially, a translation from the French of Extraordinary Cream'."

opposer extended its use of EXTRAOR-DINAIRE to others of its products.

For the five years immediately preceding November 1959 the word EXTRAORDINAIRE was used on opposer's soap to the extent of several hundred thousand cakes of soap each year.

Opposer extended its use of EXTRAORDINAIRE to its shaving cream, sometime after applicant began use of its mark. The cartons and containers for such shaving creams now carry the word EXTRAORDINAIRE.

Opposer has advertised its products extensively through cooperative advertising, the larger portion of which was directed to its colognes. In this advertising, the term EXTRAORDINAIRE is displayed in the text or in a picture of the container so marked, or in both ways. Specimens of the cologne referred to in such advertisements were offered in evidence and show the word EXTRAORDINAIRE prominently displayed on the front of the bottle.

Applicant is the operator of the Elizabeth Arden Salons and is a manufacturer and distributor of cosmetics, face treatment creams, and perfumes. Its products and those of opposer are customarily sold in the same departments of the same stores.

Some years after opposer's first use of EXTRAORDINAIRE, applicant's "Creamy Emulsion" with the notation CREME EXTRORDINAIRE went on sale in retail stores in 1958 and applicant has expended substantial sums in advertising this product.

The only differences noted between applicant's mark CREME EXTRORDINAIRE and opposer's use of the word EXTRAORDINAIRE are in the use of the descriptive term "Creme" and in applicant's omission of the letter *a*. In this connection, it seems to us that the words *Extraordinaire* and *Extrordinaire* are the same for all practical purposes and that they are used by both parties to suggest an asserted quality of the product upon which the marks are used.

Appellant's position as stated in its brief is:

"It would appear obvious from an examination of the physical exhibits of appellee that as applied to the goods of appellee, the word Extraordinaire is not used as a trademark at all, but only as a descriptive word * * *."

It is then appellant's position that its omission of the letter *a* in the word *Extraordinaire* changes what appellant refers to as its "descriptive" nature. Even if we assume for purposes of the argument that appellant is correct in its position, as quoted above, appellant's omission of the letter "a" does not help appellant's case. As stated by the Supreme Court in Standard Paint Company v. Trinidad Asphalt Manufacturing Company, 220 U.S. 446, 455, 31 S.Ct. 456, 55 L.Ed. 536, in relation to the words "Rubberoid" and "Ruberoid" which differed by the omission of one of the letters "b":

"The word, therefore, is descriptive, not indicative of the origin or the ownership of the goods; and, being of that quality, we cannot admit that it loses such quality and becomes arbitrary by being misspelled. Bad orthography has not yet become so rare or so easily detected as to make a word the arbitrary sign of something else than its conventional meaning, as different, to bring the example to the present case, as the character of an article is from its orgin or ownership."

Applicant's use of EXTRORDINAIRE is simply a misspelling of the word "extraordinaire" which applicant identifies in its advertising, in its English form, as an "extraordinary cream."

The notice of opposition alleges that opposer has used the word "Extraordinaire" as a trademark prior to applicant's adoption of its mark "Creme Extrordinaire". Opposer has supported this allegation in its notice of opposition both by testimony and physical exhibits.

---

We think the use by applicant of the word "Extrordinaire" would be likely to create confusion, mistake or deception of purchasers when used on its goods in view of opposer's established prior use of its mark "Extraordinaire".

Appellant asserts, however, that "opposer is barred from obtaining relief due to its misuse of the registration symbol." As pointed out in appellant's brief:

> "Examination of opposer's physical exhibits discloses that each bottle in evidence has the registration symbol, the R within a circle, either directly in front of or directly after the notations here relied upon, to wit: Cologne extraordinaire and Perfume extraordinaire."

Appellant then asserts:

> "Such use, or more exactly misuse, of the statutory symbol would automatically bar registration of the notations to opposer, because of such misconduct; it should also bar any relief based upon a notation in conjunction with which the registration symbol has been falsely and fraudulently used."

No authority has been cited by appellant supporting this position and we know of none.

Examination of the record and the physical exhibits demonstrates a lack of merit in appellant's position. Sec. 29 of the Lanham Act (15 U.S.C. § 1111, 15 U.S.C.A. § 1111) requires that the notice shall be displayed "with the mark as used." Opposer displays the notice of its trademark registrations on its bottles, along with other marks which are registered. As stated by opposer's witness:

> "Faberge has a trademark registration on this particular bottle, for example, on the trademark 'Faberge' and 'Aphrodisia.' The 'registered,' as far as I know, applies to these two trademarks which appear on this bottle. I think the 'R' was placed in this position on the bottle, because we wanted to keep the harmonious relationship of the front of the bottle."

The Trademark Trial and Appeal Board found from opposer's testimony that the symbol was intended to refer to the design of opposer's bottles.[2] Appellant has not shown the board's conclusion on this point to be erroneous and has, in fact, failed to produce any evidence of an intent on the part of opposer to deceive the public by such marking. Under these circumstances, we accept these fact findings of the board. Cf. Coca-Cola Company v. Victor Syrup Corporation, 218 F.2d 596, 42 CCPA 751; Part, Inc. v. Sormani, 80 F.2d 78, 23 CCPA 773.

For the foregoing reasons, we *affirm* the decision below.

Affirmed.

MARTIN, Judge, did not sit or participate because of illness.

2. Opposer, in addition to its registrations for "Faberge" and "Aphrodisia," has several registrations covering the configurations of several of its bottles and their caps.